Approved: _/s/_____
MICHAEL D. LONGYEAR
Assistant United States Attorney

Before: THE HONORABLE JAMES C. FRANCIS IV
United States Magistrate Judge
Southern District of New York

**17 MAG 2439**

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA : **SEALED COMPLAINT**

- v. - : Violations of
18 U.S.C. §§ 1546(a),
CHARLES JASON LORE, : 1028A, 1341, and 2

Defendant. : COUNTY OF OFFENSE:
NEW YORK

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

ANTHONY CORDOMA, being duly sworn, deposes and says that he is a Special Agent with the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), and charges as follows:

**COUNT ONE**
(Fraud and Misuse of Visas, Permits, and Other Documents)

1. From at least in or about April 2011, up to and including at least in or about September 2014, in the Southern District of New York and elsewhere, CHARLES JASON LORE, the defendant, willfully and knowingly did utter, use and attempt to use, possess, obtain, accept, and receive visas, permits, border crossing cards, alien registration receipt cards, and other documents prescribed by statute and regulation for entry into and as evidence of authorized stay and employment in the United States, knowing them to be forged, counterfeited, altered, and falsely made, and to have been procured by means of false claims and statements, and to have been otherwise procured by fraud and unlawfully obtained, to wit, LORE caused to be submitted falsified and forged I-129 Forms and other documents in support of applications for immigration visas.

(Title 18, United States Code, Sections 1546(a) and 2.)

**COUNT TWO**
(Aggravated Identity Theft)

2.      From at least in or about March 2014, up to and including at least in or about January 2015, in the Southern District of New York and elsewhere, CHARLES JASON LORE, the defendant, knowingly did transfer, possess, and use, without lawful authority a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, LORE forged the signature and used identifying information of another individual to submit visa applications without the permission or knowledge of the other individual.

(Title 18, United States Code, Section 1028A(a)(1).)

**COUNT THREE**
(Mail Fraud)

3.      From at least in or about April 2011, up to and including at least in or about January 2015, in the Southern District of New York and elsewhere, CHARLES JASON LORE, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did cause to be delivered by mail and such carriers, according to the directions thereon, and at the places at which they were directed to be delivered by the person to whom they were addressed, such matters and things, to wit, LORE sent fraudulent and forged visa application packages via Federal Express in the course of and in furtherance of the fraudulent scheme described in Count One.

(Title 18, United States Code, Section 1341.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.      I am a Special Agent assigned to HSI, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law

enforcement agents, witnesses and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## OVERVIEW

5.   Based on the facts set forth below, I respectfully submit that there is probable cause to believe that CHARLES JASON LORE, the defendant, has participated in a scheme to submit fraudulent I-129 Forms in support of applications for temporary nonimmigrant worker visas ("O-1 Visa"). Specifically, LORE appears to have submitted over 150 fraudulent letters of support in connection with many O-1 Visa petitions. *See infra* ¶¶ 10(b)-(c); 10(g)-(h); 10(l)-(m). In deciding whether to grant an O-1 Visa petition, United States Customs and Immigration Services ("USCIS") relies on the letters of support to determine whether the beneficiary possesses the extraordinary ability or has demonstrated the requisite achievement to obtain the O-1 Visa. *See infra* ¶ 6(c). In addition, after he was approached by USCIS concerning an apparent fraudulent letter of support, LORE submitted visa petitions in the name of another attorney, without that attorney's knowledge or consent. *See infra* ¶¶ 11(a)-(f).

## BACKGROUND

6.   Based on my training, experience, and participation in this investigation, I have learned the following:

a.   An O-1 Visa is intended for an individual who possesses extraordinary ability in the sciences, arts, education, business, or athletics, or who has a demonstrated record of extraordinary achievement in the motion picture or television industry and has been recognized nationally or internationally for those achievements. As part of the application process, an O-1 Visa petition, with limited exceptions, must include a written advisory opinion from a peer group or a person with expertise in the beneficiary's area of ability ("No-Objection Letter").

b.   A petitioner, beneficiary, or attorney may request a No-Objection Letter from a peer group to support an

3

application for an O-1 Visa. The peer group typically charges a non-refundable fee to conduct a review of the beneficiary's materials. After reviewing the body of work of the proposed O-1 Visa beneficiary, the peer group may either issue or decline to issue a No-Objection Letter.

        c. In reviewing the O-1 Visa qualifications for actors, musicians, and others involved in the production of films or music, USCIS relies in part on genuine No-Objection Letters by industry firms to determine a beneficiary's eligibility.

       7. CHARLES JASON LORE, the defendant, is an immigration attorney with a law office in Manhattan, New York.

## THE INVESTIGATION

       8. Based on my review of Form 1-129 petitions submitted by CHARLES JASON LORE, the defendant,[1] on behalf of his clients, my conversations with law enforcement agents, witnesses and other individuals, I have learned the following:

        a. Since approximately April 2011, more than 150 fraudulent No-Objection Letters have been submitted in connection with O-1 Visa petitions submitted by LORE, who acted as the attorney for either the petitioner or the beneficiary.

        b. Each of the above-referenced petitions included a No-Objection Letter, purportedly issued by an appropriate organization after considering the beneficiary's materials.

        c. LORE submitted approximately 189 Visa petitions using the name of a different attorney ("Victim-1") without Victim-1's knowledge or permission. *See infra* ¶ 11.

       9. Based on my review of interviews of witnesses, the following organizations have confirmed to HSI that fraudulent No-Objection Letters bearing each organization's letterhead that were submitted in connection with O-1 Visa petitions prepared by CHARLES JASON LORE, the defendant, were fraudulent:

---

[1] The Form I-129 petitions were signed by CHARLES JASON LORE, the defendant, and were mailed to USCIS' Vermont office from LORE's law office in Manhattan, New York.

a. Organization-1, based in Sherman Oaks, California, represents major feature and television motion picture producers in the motion picture industry. A representative of Organization-1 confirmed that approximately 74 No-Objection Letters purportedly issued by Organization-1 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-1.

b. Organization-2, based in Los Angeles, California, represents actors, announcers, broadcast journalists, dancers, DJs, news writers, news editors, program hosts, puppeteers, recording artists, singers, stunt performers, voiceover artists and other media professionals. A representative of Organization-2 confirmed that approximately 44 No-Objection Letters purportedly issued by Organization-2 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-2.

c. Organization-3, based in Beverly Hills, California, represents members of the producing team in film, television and new media. A representative of Organization-3 confirmed that approximately 13 No-Objection Letters purportedly issued by Organization-3 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-3.

d. Organization-4, based in New York, New York, represents musicians who perform on Broadway and who make music for films, TV, commercials, and sound recordings. A representative of Organization-4 confirmed that approximately 7 No-Objection Letters purportedly issued by Organization-4 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-4.

e. Organization-5, based in New York, New York, represents individual artists and art organizations. A representative of Organization-5 confirmed that approximately 18 No-Objection Letters purportedly issued by Organization-5 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-5.

f. Organization-6, based in New York, New York, represents stagehands who work in live theater, motion picture and television production. A representative of Organization-6 confirmed that approximately one No-Objection Letter purportedly issued by Organization-6 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-6.

g. Organization-7, based in New York, New York, represents performing artists and stage managers for live performances in the variety field. A representative of Organization-7 confirmed that approximately 42 No-Objection Letters purportedly issued by Organization-7 in connection with O-1 Visa petitions submitted by LORE in fact had not been issued by Organization-7.

## FRAUDULENT VISA PETITIONS

10. The following are examples of fraudulent O-1 Visa petitions prepared by CHARLES JASON LORE, the defendant, on behalf of petitioners and beneficiaries and sent by Federal Express from LORE's law office in Manhattan, New York, to the USCIS processing center in Vermont:

### Petition-1

a. On or about March 7, 2012, LORE submitted an I-129 Form on behalf of a particular petitioner ("Petitioner-1") and Petitioner-1's beneficiary ("Beneficiary-1") ("Petition-1"). Petition-1 sought an O-1 Visa for Beneficiary-1. No-Objection Letters from both Organization-1 and Organization-7 were filed in connection with Petition-1.

b. On or about March 22, 2011, an employee from Organization-1 ("Employee-1") had informed LORE via email that Organization-1 could not file a No-Objection Letter in support of Beneficiary-1 due to Beneficiary-1's limited experience and background in the industry.[2] Notwithstanding this rejection, however, Petition-1 included a No-Objection Letter, dated April 15, 2011, from Organization-1. Employee-1 has confirmed with USCIS that the No-Objection Letter filed in support of Petition-1 was never sent by Organization-1.

c. The purported signatory of Organization-7's No-Objection Letter filed in support of Petition-1 confirmed with USCIS that the letter was never generated by Organization-7's office. Among other things, the signatory noted that the typeset and design of the letterhead of Organization-7's purported No-Objection Letter in support of Petition-1 were different from the typeset and design of Organization-7's authentic letterhead.

---

[2] I have reviewed a copy of the email correspondence between Employee-1 and LORE, which Employee-1 provided to HSI.

6

d.  Petition-1 was sent via overnight Federal Express from LORE's law office in Manhattan, New York on or about March 7, 2012, and it was stamped received by USCIS on or about March 8, 2012.

e.  Based in part on the above-referenced No-Objection Letters, USCIS approved Petition-1 on or about March 19, 2012.

### Petition-2

f.  On or about January 4, 2013, LORE submitted an I-129 Form on behalf of a particular petitioner ("Petitioner-2") and Petitioner-2's beneficiary ("Beneficiary-2") ("Petition-2"). Petition-2 sought an O-1 Visa for Beneficiary-2. No-Objection Letters from both Organization-1 and Organization-3 were filed in connection with Petition-2.

g.  The purported No-Objection Letter from Organization-1 in support of Petition-2 appears to have been signed by Organization-1's counsel and dated December 11, 2012. Employee-1 confirmed with USCIS that the counsel who purportedly signed the No-Objection Letter in support of Petition-2 left Organization-1 in or about April 2012, so any letter signed by the counsel after April 2012 was fraudulent. In addition, Organization-1 has no record of receiving a request for a No-Objection Letter for Beneficiary-2.

h.  Organization-3 has confirmed with USCIS that the No-Objection Letter in support of Petition-2 was not issued by Organization-3.

i.  Petition-2 was sent via overnight Federal Express from LORE's law office in Manhattan, New York on or about January 4, 2013, and it was stamped received by USCIS on or about January 10, 2013.

j.  Despite the No-Objection Letters, USCIS denied Petition-2 on or about May 7, 2013.

### Petition-3

k.  On or about July 11, 2013, LORE submitted an I-129 Form on behalf of a particular petitioner ("Petitioner-3") and Petitioner-3's beneficiary ("Beneficiary-3") ("Petition-3"). Petition-3 sought an O-1 Visa for Beneficiary-3. No-Objection

7

Letters from both Organization-1 and Organization-2 were filed in connection with Petition-3.

   l.   On or about July 2, 2013, Organization-1 received a request from LORE to submit a No-Objection Letter on behalf of Beneficiary-3. Organization-1 notified LORE on or about July 2, 2013 that the file LORE submitted was oversized and had to be resubmitted. Organization-1 did not receive a further response from LORE concerning Beneficiary-3. The purported No-Objection Letter from Organization-1 in support of Petition-3 was signed by Organization-1's counsel and dated July 9, 2013. As set forth above in ¶ 10(g), the No-Objection Letter was clearly fraudulent because, among other things, it was purportedly signed by Organization-1's counsel, but the counsel had left Organization-1 in April 2012.

   m.   Petition-3 also included a No-Objection Letter, dated June 28, 2013, from Organization-2. Organization-2 has confirmed with USCIS that the No-Objection Letter in support of Petition-3 was not issued by Organization-2.

   n.   Petition-3 was sent via overnight Federal Express from LORE's law office in Manhattan, New York on or about July 11, 2013, and it was stamped received by USCIS on or about July 12, 2013.

   o.   Based in part on the No-Objection Letters, USCIS approved Petition-3 on or about July 16, 2013.

### Theft of Victim-1's Identity

   11.   Based on my review of law enforcement databases, my interview of Victim-1, my review of Victim-1's business records, my review of Form I-129 petitions purportedly filed by Victim-1, and my review of documents filed with the New York Secretary of State, I have learned the following:

   a.   In or about May 2013, CHARLES JASON LORE, the defendant, was contacted by an investigator from USCIS concerning an apparently fraudulent No-Objection Letter.

   b.   On or about February 11, 2014, LORE filed paperwork with the New York Secretary of State to incorporate a company called Professional Visa Services, Inc. LORE is listed as the registered agent, and LORE's home address is listed as the company's mailing address. Victim-1 is not identified in

any of the incorporation paperwork for Professional Visa Services, Inc.

   c. From in or about approximately February 2014 through in or about January 2015, there have been approximately 189 visa petitions filed by Professional Visa Services, Inc. Each visa petition filed by Professional Visa Services, Inc. included a Form G-28, which is a notice of entry of appearance as attorney on behalf of the petitioner or beneficiary. Each Professional Visa Services, Inc. visa petition included a Form G-28 purportedly signed by Victim-1, an attorney licensed to practice law in New York. Some of the Form G-28s filed by Professional Visa Services, Inc. included the New York State Bar Attorney Registration number associated with Victim-1.

   d. Each Form G-28 listed a Google e-mail address purportedly in the name of Victim-1 (the "Fake Victim-1 E-mail"). Based on my review of Google's business records, the Fake Victim-1 E-Mail was created on or about February 10, 2014 and listed LORE's email address as the recovery email address.

   e. Each Form G-28 provided a phone number purportedly belonging to Victim-1 (the "Scheme Number"). A review of the subscriber information for the Scheme Number shows that LORE is the listed subscriber for the Scheme Number.

   f. Each Form G-28 provided a mailing address for Professional Visa Services, Inc. in New York, New York (the "Scheme Address"). The rental agreement associated with the Scheme Address listed LORE as the primary contact.

   12. Based on my interviews of Victim-1 and my review of paperwork prepared at the same time the Professional Visa Services, Inc. visa petitions were filed, I have learned the following:

   a. Victim-1's signature is different from the signatures on each Form G-28 filed by Professional Visa Services, Inc.

   b. Victim-1's letterhead is different from the letterhead filed in connection with some of the petitions filed by Professional Visa Services, Inc.

   c. Victim-1 has never maintained an office at the Scheme Address.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of CHARLES JASON LORE, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

ANTHONY CORDOMA
Special Agent
Homeland Security Investigations

Sworn to before me this
31st day of March, 2017

THE HONORABLE JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10